YORK SHIELDS *v.* STATE OF MISSISSIPPI.

[39 South. Rep., 1010.]

CRIMINAL LAW.　*Assault with intent to kill.　Evidence.*

In a prosecution for an assault with intent to kill and murder, where the evidence was conflicting on the question as to who was the aggressor, testimony was admissible to show:

(*a*) That prosecutor had been acting as a deputy sheriff, had made out an affidavit against defendant, charging a misdemeanor, on which a warrant was issued for defendant's arrest, and that he had been appointed a special constable to serve it, because it tended to show the purpose and intent of the prosecutor in seeking defendant; and

(*b*) That prosecutor, immediately after the assault, stated that he was sorry he did not kill defendant and that he went to the place of conflict for that purpose, because it tended to show the intent of the prosecutor in seeking out the defendant at the time of the conflict.

FROM the circuit court of Claiborne county.

HON. OLIVER W. CATCHINGS, Judge.

Shields, the appellant, was indicted and tried for and convicted of an assault and battery with intent to kill and murder one Wilbur F. Smith, and appealed to the supreme court.

Appellant went to the village of Carlisle to have some plow points sharpened for McCaleb, on whose place he was a laborer. Some time prior to this, McCaleb had become surety on the appearance bond of one Harper. The latter had made default, and McCaleb was endeavoring to arrest him and had employed appellant to assist therein. Harper's relatives became incensed, and one of them threatened to kill appellant, and appellant procured a pistol and carried it swung from his shoulder in full view. While appellant was standing in the door of a blacksmith shop at Carlisle, his pistol swinging at his side, Wilbur F. Smith, the prosecutor—who had been appointed a deputy sheriff by

written appointment from the sheriff, but who had not properly qualified—seeing appellant with the pistol, although he had no warrant for his arrest, assumed that appellant was guilty of carrying weapons concealed and undertook to take the pistol from him.   Appellant resisted and a scuffle ensued, but the pistol was finally taken from appellant.   Smith then went before his brother, B. W. Smith, a justice of the peace, and made affidavit against appellant.   A warrant was issued by the justice of the peace, and W. F. Smith specially deputized as a constable to execute it.   Thereupon the two Smiths—one a justice of the peace and the other a special deputy constable— both armed, went to the plantation of McCaleb and pro- ceeded to the field where appellant was working.   W. F. Smith did not have on a coat, and his pistol was plainly visible in his hip pocket.   He did not tell Shields that he had a warrant for his arrest.   According to the state's evi- dence, W. F. Smith said, "Well, York," and at the same time reached toward his left hip pocket for the warrant, whereupon appellant jerked out his pistol and began firing at him, and by the time the third shot had been fired Smith had gotten his pistol out and returned the fire.   While appellant was attempting to escape, C. C. Smith, a brother of the other two Smiths, rode up on horseback and shot at him.   Appellant testified that when Smith approached him and said, "Well, York," he (Smith) threw his hand to his hip pocket, pulled his pistol, and began firing, and that B. W. Smith also began shooting at appellant, when appellant shot back in self-defense.   McCaleb testified that he heard the shooting, and saw two men on the public road in his field after the first shooting, then three.   This witness also tes- tified that he heard Wilbur Smith say: "I am sorry I did not kill the negro; I came down here for the purpose of killing him." This was just after the shooting.   The following testimony of Mrs. McCaleb was excluded by the court over the objection of the defendant: "After I heard these shots—I saw the shots in

the field where the negro was working; he was in sight of me, and I saw three men after him; and I saw one of them, C. C. Smith, chasing him with a pistol on a horse, and he shot at him twice running through the field."

*J. McC. Martin,* and *F. A. Polsley,* for appellant.

All that was heard and seen by McCaleb and his wife unquestionably tends to throw light on the whole occurrence. What Mrs. McCaleb heard and saw was, clearly, part of the *res gestae;* for what was heard and seen makes part of the facts, declaration, and circumstances, which, growing out of the main fact, are contemporaneous with it and serve to illustrate its character. Greenleaf on Evidence, sec. 108, and notes; *Pinney* v. *Jones,* 42 Am. St. Rep., 209; *Hermes* v. *Chicago,* 27 Am. St. Rep., 69; *Ward* v. *Yazoo, etc., R. R. Co.,* 79 Miss., 145 (s.c., 29 South. Rep., 829).

*R. V. Fletcher,* assistant attorney-general, for appellee.

Acts and circumstances are not to be admitted as part of the *res gestae* unless they grow out of the main fact and serve to illustrate or explain it. 24 Am. & Eng. Ency. Law (2d ed.), 666, and cases there cited.

And the same authority says: "Although there is a substantial coincidence in the time of the principal fact and the time of the declaration or accompanying fact, that alone is insufficient to render the accompanying fact admissible as a part of the *res gestae,* but must be well calculated to unfold the nature and quality of the main fact and to so harmonize with it as obviously to constitute one transaction." 24 Am. & Eng. Ency. Law (2d ed.), 666.

HARPER, Special J., delivered the opinion of the court.

There was but one question in this case for the jury to determine, and that was, Who was the aggressor? On this point the direct testimony was conflicting, and it was necessary to con-

sider the extrinsic circumstances that tended in any way to shed light on this question.    The purpose and intent of Smith, the prosecutor, in seeking out the defendant, therefore, became important, and it was proper for the court below to permit the state to show that Smith had been acting as deputy sheriff under color of authority at least; that he had made out the affidavit against defendant for carrying a concealed weapon; that a warrant had been issued for defendant's arrest, and that Smith had been appointed a special constable to serve the same.    Whether his appointment was regular or not would seem to be unimportant in this case.

For the same reason, and not because it was part of the *res gestae,* all the evidence of Mrs. McCaleb, offered by defendant, should have been admitted.    It tended to show in some measure that Wilbur Smith went to the scene for the purpose of killing defendant, and that he expected and prepared for an affray by having both his brothers on hand, armed and ready for action.

*For this error of the court in excluding the greater part of Mrs. McCaleb's testimony, this cause is reversed and remanded.*